IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DELANCEY, | : | No.  4:CV 05-2430 |
| | : | |
| Plaintiff, | : | Judge Jones |
| | : | |
| v. | : | |
| | : | |
| TAYLOR EXCEL and TAYLOR | : | |
| PACKING COMPANY, INC., and | : | |
| CARGILL MEAT SOLUTIONS | : | |
| CORPORATION, | : | |
| Defendants | : | |

## MEMORANDUM AND ORDER

### January 12, 2007

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is Defendants', Cargill Meat Solutions Corporation and Taylor Packing Co., Inc. (incorrectly named as Taylor Excel and Taylor Packing Company, Inc.)(hereinafter, collectively referred to as "CMSC")  Motion for Summary Judgment ("the Motion") (doc. 21) filed on October 2, 2006.

For the following reasons, the Motion (doc. 21) will be granted in part and denied in part.

**PROCEDURAL HISTORY**:

Plaintiff John Delancey ("Plaintiff" or "Delancey") commenced this action by

filing a complaint (doc. 1) on November 22, 2005.  CMSC filed an answer (doc. 3) on March 13, 2006.

In Count I of the complaint, Plaintiff claims that he was discriminated against in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.  § 621 et seq.  In Count II of the complaint, Plaintiff claims he was discriminated against in  violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.  In Count III of the complaint, Plaintiff claims he was retaliated against in violation of the ADEA and ADA.  In Count IV of the complaint, Plaintiff claims that he was discriminated against in violation of the Pennsylvania Human Relations Act, 43 Pa. C. S. § 955(a).

Following the close of discovery, CMSC filed the instant Motion, which was fully briefed by the parties.  The Motion is therefore ripe for our review.

## STANDARD OF REVIEW:

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED .R. CIV. .P.  56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351,357 (3d Cir. 1992).  Summary judgment should not be granted when there is a

disagreement about the facts or the proper inferences which a fact finder could draw from them.  See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986).  This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial.  Id. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e).  The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor.  Celotex Corp., 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the

3

light most favorable to the non-moving party, and where the non-moving party's

evidence contradicts the movant's, then the non-movant's must be taken as true."

Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir.

1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original). "As to

materiality, the substantive law will identify which facts are material." Id. at 248. A

dispute is considered to be genuine only if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." Id.

**FACTUAL BACKGROUND**:

The facts in this matter as well as the inferences they raise are almost entirely

disputed between the parties. The essence of Plaintiff's claim is that CMSC took

adverse employment actions against him based upon his alleged disability as well as

his age. Plaintiff was born on February 28, 1953 and at all times relevant hereto

was fifty-one years of age. Plaintiff has been an employee of CMSC's Wyalusing,

Pennsylvania meat processing plant since on or about March 15, 1976. (Rec.

Docs. 23 at ¶1; 40 at ¶1). CMSC and its predecessors in interest, including Taylor

4

Packing Co., Inc., have owned and operated the Wyalusing plant throughout all of Plaintiff's employment.   (Rec. Doc. 23 at ¶2).

Over the past thirty years, Plaintiff has worked in a number of different positions, including Skin Udders, Tail Runner, Cut Front Legs Off, Snoots, Cut Snoots Off, and Hang Back Legs.  (Rec. Doc. 40 at ¶4).          Plaintiff alleges that during the last four years, he was harassed by his fellow employees as well as by supervisors of the Defendants.

Plaintiff was first suspended following an incident that occurred on January 7, 2005,with a co-worker Jose Sorto, during which the two sprayed water on each other while working.  The facts and circumstances surrounding the incident are almost entirely disputed by the parties, but for the fact that it occurred and as a result Plaintiff was suspended.  After he returned from his first suspension in January 2005, CMSC transferred Plaintiff to the position of SBO (Brain) Removal. Defendant alleges that at the time of Plaintiff's transfer, he was earning $12.94 per hour, while the base pay for the Brain Removal position was $12.00 per hour. (Rec. Doc. 23 at ¶14).  Plaintiff alleges that he was earning $12.69 per hour at the time of the "forced demotion."  (Rec. Doc. 40 at ¶13).  CMSC alleges that at the time of Plaintiff's transfer to Brain Removal, he was earning ninety-four cents per hour more than the base-rate established for the position, however CMSC "red-

5

circled" his wages so that they would not be reduced by the transfer.  (Rec. Doc. 23 at ¶¶2-13).

CMSC alleges that shortly after Plaintiff was moved to the Brain Removal position, a supervisor saw Plaintiff reach into an auger without locking out the auger, which is a designated safety procedure.  (Rec. Doc. 23 at ¶20).  Plaintiff alleges that he performed the job the way he was trained, and that although he knew about it, he was not trained on the lockout procedures.  (Rec. Doc. 40 at ¶20). CMSC alleges that it has provided Plaintiff with extensive training on lockout procedures.  (Rec. Doc. 23 at ¶22).  Following this safety violation, Plaintiff was suspended for 3 days.  (Rec. Doc. 40 at ¶23).  On February 5, 2005, Plaintiff filed an initial charge with the EEOC, alleging violations of the ADEA and the ADA. (Rec. Doc. 28 at 10).

On May 26, 2005, CMSC notified its employees that effective June 6, 2005, all production and maintenance related rates would be receive a cost of living adjustment increase by twenty-five cents per hour.  Upon receipt of his paycheck after the notification, Plaintiff noticed that he had not received the hourly increase in his pay, which he understood everyone else to have received.  CMSC alleges that Plaintiff was one of five employees who were ineligible for the wage increase because he had been "red-circled."  (Rec. Doc. 23 at ¶15).  Plaintiff disagrees, and

alleges that he was denied the wage increase as a result of his "forced transfer to the basement."

During the discovery phase of this litigation, Plaintiff testified as follows regarding his alleged disability:

Q:     You understand that part of your claim in this lawsuit is that you have a disability?
A:     Yes
Q:     What is that disability?
A:     I'm dumb.
Q:     What do you mean by that?
A:     I don't know nothing.
Q:     Well you know some things, right?
A:     yes, but I'm not smart.  I can't read.  I don't understand what I read. I read, but I can't understand everything I read.  I don't know how to spell.
Q:     Anything else about your disability?
A:     Just don't know anything much.

(Deposition of Plaintiff, Plaintiff's Ex. A at pp. 40-41).       In his deposition, Plaintiff testified that he did not recall if he had ever been diagnosed by a health care professional as having a mental condition of any kind, nor could he remember if a teacher or school principal had informed him that he suffered from a learning disability.  (Dep. of Plaintiff at pp. 41-42).

**DISCUSSION**:

In the instant Motion, Defendant presents several arguments as to why summary judgment should be entered in its favor.  As previously noted, Plaintiff

and Defendant disagree on nearly every fact and circumstance pertaining to this matter. Moreover, the parties fall at such opposite ends of the spectrum regarding not only the facts but also the inferences the factual allegations raise, it would be entirely impermissible to grant summary judgment on all but the retaliation claim at this juncture. We shall undertake a brief discussion, highlighting the main reasons why the instant Motion must fail, with the exception of the retaliation claim.

**DISCUSSION**:

A.    Disability Claims

CMSC argues that it is entitled to judgment as a matter of law on all of Plaintiff's ADA and PHRA claims because Plaintiff is not considered disabled as defined by the ADA.

A person is considered to be disabled where he has 1) a physical or mental impairment that 2) substantially limits one or more of his major life activities. 42 U.S.C. § 12102(2). A person suffers from a mental impairment when he has a "mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). A person is substantially limited in a major life activity when he "is '[s]ignificantly restricted as to the condition, manner or duration under which [he] an perform a particular major life activity as compared to the condition, manner, or

8

duration under which the average person in the general population can perform that same major life activity."  Walton v. Mental Health Association of Southeastern Pennsylvania, 168 F. 3d 661, 665 (3d Cir. 1999)(quoting 29 C.F.R. § 1630.2(j)).

By his own account, Plaintiff characterizes his alleged disability as being "dumb" and that he "don't know nothing."  He admits that he does not recall ever being diagnosed as having a mental disorder and has provided the Court with no documentation that supports his claim of a mental impairment.  The Defendant argues that Plaintiff's failure to provide medical evidence of his impairment is fatal to his ADA claims, however we disagree.

In Marinelli v. City of Erie, Pennsylvania, 216 F. 3d 354, 360-361 (3d Cir. 2000), the Third Circuit held that "the necessity of medical testimony [to prove the existence of an alleged disability] turns on the extent to which the alleged impairment is within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge."  In Marinelli, the Third Circuit held that the Plaintiff's alleged impairment of neck pain was a type of ailment not technical in medical nature and was within the comprehension of a jury.   Given the state of the law, a reasonable inference from the facts before us is that the Plaintiff suffers from a severe learning disability or a form of mental retardation. At this stage, we shall endeavor to give Plaintiff the benefit of the doubt as we must, and

although we hold that Plaintiff's disability claims survive summary judgment, the validity of the claims appear to us to be weak at best.[1] Accordingly, inasmuch as we cannot find that Plaintiff does not suffer from a disability as a matter of law, and shall deny the Defendant's motion with respect to the ADA and PHRA claims on that ground (Counts II and IV).

B.      Age Discrimination Claims

As noted by the Defendant, in his complaint, Plaintiff appears to bring claims under the ADEA for hostile work environment, discriminatory transfer and failure to promote and/or train.  Our review of the disputed facts in this matter indicate to us that it is inappropriate at this juncture to grant summary judgment on Plaintiff's age-based hostile work environment, discriminatory transfer and failure to promote and/or train claims.  In particular, a genuine issue of material fact remains as to whether the alleged harassment was severe and pervasive.  Moreover, we do find that a genuine issue of material fact remains as to whether Plaintiff suffered an adverse employment action when he was transferred to the Brain Removal position.  Accordingly, we shall deny the Motion with respect to Plaintiff's age discrimination claims (Count I).

---

[1] However, forewarned is forearmed and we advise Plaintiff that his burden at trial to prove the existence of a disability is greater, and that more must be presented to prove out his claims at trial.

C.      Retaliation Claim

Defendant argues that Plaintiff's retaliation claim must fail as a matter of law because the Defendant has proffered a legitimate, non-discriminatory reason explaining why Plaintiff did not receive the twenty-five cent wage increase.

Plaintiff claims that as a result of the charge of discrimination he filed with the EEOC in February, 2005, he was denied a twenty-five cent wage increase that was given to other employees.   CMSC concedes that Plaintiff was denied the twenty-five cent increase, however CMSC avers that Plaintiff did not receive the increase because he had been "red-circled:" when he was transferred to a lower-paying job in the Brain Removal room, he was allowed to keep his previous, higher pay rate, thereby disqualifying him for the twenty-five cent increase.

Inasmuch as the Defendant has proffered a legitimate, non-discriminatory reason as to why Plaintiff did not receive the pay increase, the Plaintiff may succeed on his retaliation claim if he proves that the "legitimate reasons offered by the [D]efendant were not its true reasons, but were a pretext for discrimination." Shaner v. Snythes, 204 F. 3d 494, 500 (3d Cir. 2000).

Common-sense and good, old-fashioned logic lead us to the obvious conclusion that Plaintiff was not retaliated against for his EEOC complaint when he was denied the twenty-five cent wage increase in May, 2006.  What happened was

11

simply this: when Plaintiff was transferred to the Brain Removal position, he remained at his previous salary, which was higher than the base rate for his new position in the Brain Removal room.[2]  Thereafter, when the cost of living increase was granted, Plaintiff was ineligible because he had maintained the higher wage upon his transfer.   In essence, Plaintiff seeks to have it both ways: he was benefitted by being "red-circled" inasmuch as he did not receive a pay cut to $12.00 per hour upon his transfer, however now he argues that he was retaliated against because he was not entitled to receive the cost of living adjustment.  Simply put, we cannot find that Plaintiff has provided any evidence to the Court that he was retaliated against and accordingly we shall grant summary judgment in favor of the Defendant on Plaintiff's retaliation claim (Count III).

## <u>CONCLUSION</u>:

Accordingly, for the foregoing reasons, we grant the Defendant's Motion with respect to Count III of the complaint and deny the Defendant's Motion with respect to Counts I, II and IV of the complaint.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Defendant's Motion for Summary Judgment ("the Motion") (doc. 21) is

---

[2] Even accepting Plaintiff's version (i.e. that he was earning $12.69, not $12.94, per hour), he was measurably over the base-pay for the Brain Removal position, and it is entirely logical that he would not be entitled to the cost of living increase.

12

GRANTED in part and DENIED in part to the following extent:

     a.     Summary Judgment is granted in favor of the Defendant with respect to Count III of the complaint.

     b.     Summary Judgment is denied with respect to Counts I, II and IV of the complaint.

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge